## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| GREGORY CONWAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:19-cv-36-GCS |
| | ) | |
| DON WAGNOR, | ) | |
| JOHN BALDWIN, | ) | |
| KELVIN KINK, and | ) | |
| KIMBERLY ULRICH, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Gregory Conway alleges that Defendants were deliberately indifferent to his conditions of confinement while he was incarcerated at Lawrence Correctional Center ("Lawrence") and that Defendant Ulrich retaliated against him for filing grievances. Now before the Court is a motion for summary judgment on the issue of exhaustion filed by Defendant Baldwin, Kink, and Ulrich. For the reasons delineated below, Defendants' motion is granted in part and denied in part.

### FACTUAL BACKGROUND

At all times relevant to his complaint, Conway was incarcerated at Lawrence. Defendant John Baldwin was the Director of the Illinois Department of Corrections ("IDOC"). Defendant Kelvin Kink was the warden at Lawrence, and Defendant Kimberly Ulrich was a counselor at Lawrence. Defendant Don Wagnor was Mayor of Lawrenceville, Illinois.

Conway alleges that Defendants Baldwin, Kink, and Ulrich failed to follow their own policies regarding insect and rodent infestations, leading to an infestation during which a mouse bit him. He also claims the infestation reached the dietary center, that the water is contaminated, and that there are birds nesting in the ventilation system. All of these issues have exposed Conway to illness and the water and food issues aggravate his Heliobacteria Pylori infection.

In addition to his claims about rodent and pest infestations, Conway alleges there is black mold in the showers, that Lawrence is structurally unsound and is sinking into the ground, and that Mayor Wagnor, along with Baldwin and Kink, are recklessly disregarding Environmental Protection Agency noncompliance notices sent to the Mayor and to the city council in Lawrenceville. He also claims that Defendant Ulrich allegedly retaliated against Conway for filing grievances about these conditions by going off on a racist tirade against him. In the Court's threshold order, four counts were identified:

> **Count 1:** Defendants Baldwin, Kink, and Ulrich were deliberately indifferent either personally and/or through their policies to a rodent and insect infestation in violation of the Eighth Amendment, which caused Plaintiff to be bitten and his food to be contaminated;
>
> **Count 2:** Defendants Wagnor, Baldwin, Kink, and Ulrich were deliberately indifferent either personally and/or through their policies to the contaminated water in Lawrenceville, Illinois and at Lawrence Correctional Center, which exacerbates Plaintiff's Heliobacteria Pylori infection in violation of the Eighth Amendment;
>
> **Count 3:** Defendants Baldwin, Kink, and Ulrich were deliberately indifferent either personally and/or through their policies to the conditions of confinement at Lawrence Correctional Center, including birds in the ventilation system, black mold, and general structural unsoundness, in violation of the Eighth Amendment; and

> **Count 4:** Defendant Ulrich retaliated against Plaintiff for filing grievances by going off on a racist tirade against him in violation of the First Amendment.

(Doc. 8, p. 3-4).

Relevant to this action, Conway filed four grievances. In a grievance dated May 16, 2018, Conway complained about being exposed to dangerous living conditions, including mice, spider, and insect issues. He wrote about black mold, contaminated food, birds in the vents, structural issues with the building, and contaminated water. (Doc. 49-2, p. 39, 42). He marked the grievance as an emergency, but the Chief Administrative Officer ("CAO") marked it as non-emergent on May 21, 2018. A counselor responded to Conway's grievance on May 24, 2018, noting that safety and sanitation issues, including pest control, are addressed on a regular basis and that work orders can be submitted for needed repairs.

On June 4, 2018, a grievance officer recommended denying Conway's grievance, which requested the closure of Lawrence. The CAO concurred in the decision on June 5, 2018. Conway appealed the grievance to the Administrative Review Board ("ARB") on June 25, 2018. The ARB returned the grievance to Conway on July 13, 2018, finding it untimely because Conway failed to allege specific dates the conditions existed in that he had been housed in the cell house about which he complained since February 2018. (Doc. 49-2, 37-39).

On October 1, 2018, Conway filed an emergency grievance about being bitten by a mouse on August 10, 2018; he also and mentioned his May 16, 2018 grievance about the conditions at Lawrence. The CAO marked the grievance as a non-emergency on October

10, 2018. Defendant Ulrich provided the grievance counselor response on December 12, 2018, noting that Lawrence had an approved plan for dealing with rodents and that Conway received medical treatment on August 10 for the mouse bite and self-reported on August 13, 2018, that he had no additional issues. Conway then appealed directly to the ARB without waiting for a response from the grievance officer or CAO at Lawrence, and the ARB found that his grievance was misdirected because it was not reviewed fully by officials at Lawrence. (Doc. 49-2, p. 21-23).

On November 17, 2018, Conway filed an emergency grievance after he found mouse droppings on his food tray. On November 22, 2018, the CAO found that the issue was an emergency and expedited the review process. A grievance officer was unable to substantiate Conway's claims and noted that he had access to medical care after filing his grievance. The grievance officer recommended the grievance be denied on November 30, 2018. The CAO concurred in the decision on December 2, 2018. Conway appealed the decision to the ARB, and the appeal was received on December 12, 2018. The ARB denied the appeal, finding the issue was appropriately addressed by the facility. (Doc. 49-2, 14-16).

On December 6, 2018, Conway filed an emergency grievance related to his claims that Mayor Wagnor, John Baldwin, and Kelvin Kink acted with deliberate indifference by ignoring noncompliance advisory notices from the EPA and about the water provided to inmates. It was marked as a non-emergency on December 12, 2018. (Doc. 49-2, p. 19-20). Conway immediately appealed to the ARB, which received the grievance on

December 24, 2018. The ARB returned the grievance to Conway on December 28, 2018, because his complaints were beyond the jurisdiction of IDOC. (Doc. 49-2, p. 18).

Conway filed this action on January 9, 2019. In his response to Defendants' motion, he includes a letter to the warden notarized on June 6, 2019. The letter asks about a grievance dated April 18, 2019, which complained about a spider bite and to which he received no response. He also mentions a grievance dated December 21, 2018, in which he allegedly reported that his counselor, Defendant Ulrich, was retaliating against him and destroying his grievances. (Doc. 59-1, p. 14). Conway also attaches a copy of the December 21, 2018 grievance about Ulrich's retaliation. The grievance is marked as an emergency, but there's no response from the CAO, a counselor, or a grievance officer. (Doc. 59-1, p. 29-30). Conway also includes an offender request dated July 22, 2018, in which he asks his counselor, Ulrich, about a May 2018 grievance he submitted about racist conduct, asking why he has not received a response to the grievance. (Doc. 59-1, p. 31). In a June 4, 2019 letter, Conway inquired about three grievances he allegedly submitted about Ulrich's retaliation between May 2018 and April 2019. His cumulative counseling summary does not reflect any grievance filed by Conway on December 21, 2018, nor does it show any grievances related to racist conduct by Ulrich or other prison officials. (Doc. 49-1).

The Court held an evidentiary hearing on February 18, 2020. Conway admitted the basic information regarding the four grievances submitted by Defendants, though he disagreed with the ARB's determinations. He testified that he believed that Defendant Ulrich, who was the first person to receive inmate grievances, threw them away if they

were about her. He also testified about writing letters when he received no response, but those allegedly also went unanswered. Defendants countered that the October 1, 2018 grievance about mice refers to Defendant Ulrich as the "7 house counselor" and that Conway received a response to it from Ulrich.

## LEGAL STANDARDS

Summary judgment is "proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. (emphasis added).

Generally, the Court's role on summary judgment is not to evaluate the weight of the evidence, to judge witness credibility or to determine the truth of the matter. Instead, the Court is to determine whether a genuine issue of triable fact exists. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). In *Pavey*, however, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-741 (7th Cir. 2008).

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See, e.g., Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)(noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

In *Pavey*, the Seventh Circuit set forth procedures for a court to follow in a situation where failure to exhaust administrative remedies is raised as an affirmative defense. The Seventh Circuit stated the following:

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the

district judge in determining that the prisoner had exhausted his administrative remedies.

*Pavey*, 544 F.3d at 742.

As an inmate confined within the IDOC, Plaintiff was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("grievance procedures") to exhaust his claims properly. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. *See* 20 ILL. ADMIN. CODE § 504.820(a). The grievance officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. *See* 20 ILL. ADMIN. CODE § 504.850(a). The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

The grievance procedures also allow an inmate to file an emergency grievance. *See* 20 ILL. ADMIN. CODE § 504.840. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine that] there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender [such that] the grievance [should] be handled on an emergency basis." 20 ILL. ADMIN. CODE § 504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender indicating what action shall be or has been taken." 20 ILL. ADMIN. CODE

§ 504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE § 504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

## ANALYSIS

Conway did not exhaust his October 1, 2018 grievance, nor did he exhaust the grievance dated December 6, 2018. The October grievance concerned Conway being bitten by a mouse in August 2018, and the December grievance complained about Defendants Wagnor, Baldwin, and Kink ignoring EPA notices about water quality. Conway appealed both of these grievances directly to the ARB before the CAO at Lawrence weighed in on his complaints. The ARB did not weigh in on the merits of either grievance, rejecting the October grievance as misdirected and the December grievance as outside its jurisdiction.

Conway's earliest relevant grievance, filed May 16, 2018, addressed rodent and pest infestations, black mold, birds living in the vents, structural issues, and contaminated water. While the grievance did not include specific dates, as required under IDOC regulations, officials at Lawrence responded to the merits of the grievance. Where prison officials choose to consider the merits of an untimely grievance, a claim is deemed exhausted. *See Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005)(citing *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004)).

Nonetheless, exhaustion of the May 2018 grievance is a closer call because, while Lawrence officials addressed the merits of Conway's complaints, the ARB denied the grievance as untimely. However, a procedural shortcoming, like failing to meet deadlines, "amounts to a failure to exhaust only if prison administrators explicitly relied on that shortcoming." *Conyers*, 416 F.3d at 585 (citing *Ford v. Johnson*, 362 F.3d 395, 397-398 (7th Cir. 2004)). In this case, the Court finds that Conway's May 16, 2018 grievance, in which he complained of ongoing conditions of confinement, was addressed on the merits by Lawrence administrators prior to the ARB's untimeliness finding, and the dual grounds for denying the grievance lead the Court to conclude that the May 16, 2018 grievance was exhausted fully.

Defendants raise no developed challenge to the procedure Conway followed with respect to his November 17, 2018 grievance, which involved an incident where Conway allegedly found mouse droppings on his food tray. This grievance was reviewed by the appropriate officials at Lawrence and was appealed to the ARB in a timely manner. The ARB denied the grievance on its merits, demonstrating that this grievance was exhausted.

Instead, Defendants argue that both the May 16, 2018 grievance and the November 17, 2018 grievance fail to specifically name Defendants Baldwin, Kink, and Ulrich, by name or description. Grievances are intended to give prison officials an opportunity to address shortcomings, not to put individual defendants on notice. *See Jones v. Bock*, 549 U.S. 199, 218 (2007). Here, each Defendant received, or reviewed in some manner, the two grievances. While Conway does not name Defendants or describe them, the grievances are sufficient to give prison administrators notice of the alleged poor conditions and to

allow them an opportunity to address the conditions. As such, the Court finds that the May 16, 2018 grievance and the November 17, 2018 grievance were exhausted as to Defendants Baldwin, Kink, and Ulrich. These grievances exhaust Conway's conditions of confinement claims as alleged in Counts 1, 2, and 3.

As to the retaliation claim against Defendant Ulrich in Count 4, the Court finds that Conway did not exhaust his administrative remedies prior to filing suit. Conway provided the Court with a copy of a May 21, 2018 grievance regarding a racist, profanity-laced tirade that Ulrich allegedly went on when Conway asked her about a letter he sent on May 15, 2018. He claims he placed the grievance in the box for Ulrich to collect but that Ulrich must have thrown it away. Importantly, during this same period, Conway filed a grievance dated May 16, 2018, complaining about Ulrich, and he did receive a response. Then, exactly seven months later, he followed up with a second grievance dated December 21, 2018. In that grievance he complained, in nearly identical language, about not receiving a response to the May 21, 2018 grievance. This second grievance was marked as an emergency, but no response from the CAO appears on the copy filed with the Court.

The determination of whether Conway exhausted his retaliation claim rests on a credibility determination. Considering the record as a whole, the undersigned does not find it credible that these grievances, which are not noted in Conway's counseling summary or present in his grievance file, were submitted and destroyed. While Conway suggested that Ulrich destroyed grievances directed at her conduct, the May 16, 2018

grievance complains about her, and she responded to it during the same period in which she allegedly was retaliating against him for filing grievances.

Additionally, even if Ulrich destroyed the May 16, 2018 grievance, that would not explain why the emergency grievance dated December 21, 2018 has no institutional response. Emergency grievances are forwarded directly to the CAO, and there is no explanation in the record for why the CAO failed to respond.[1] Reviewing all of the information in the record, the undersigned must conclude that Conway's grievances as to his retaliation claim either were never filed at Lawrence or were never fully exhausted.

## CONCLUSION

For the above-stated reasons, Defendants' motion for summary judgment is **GRANTED in part** and **DENIED in part**. Plaintiff Gregory Conway's retaliation claim against Defendant Kimberly Ulrich is **DISMISSED without prejudice** for failure to exhaust administrative remedies. Counts 1, 2, and 3 remain pending against all Defendants.

**IT IS SO ORDERED.**

Dated: March 9, 2020.

Digitally signed by Magistrate Judge Gilbert C. Sison
Date: 2020.03.09 12:00:56 -05'00'

GILBERT C. SISON
United States Magistrate Judge

---

[1] The December 2018 grievance standing alone also cannot exhaust Conway's retaliation claim because he filed suit before officials at Lawrence had an opportunity to respond or to fail to respond.